# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| MICHAEL FORD, et al., <br>     Plaintiffs, <br> v. <br> [24]7.AI, INC., <br>     Defendant. | Case No. 18-cv-02770-BLF <br><br> **ORDER DENYING PARTIES' STIPULATED REQUEST TO SET A SCHEDULE FOR FURTHER BRIEFING; AND GRANTING DEFENDANT'S MOTION TO DISMISS ACTION UNDER FIRST-TO-FILE RULE** <br><br> [Re: ECF 77, 88] |

This putative class action was filed on May 10, 2018, asserting claims arising out of a 2017 data breach that affected customers of several large companies, including Best Buy, Delta Airlines, and Sears, all of which had hired Defendant [24]7.ai, Inc. ("[24]7") to provide sales support to their customers, including online chat services. Plaintiffs claim that the data breach was caused by [24]7's inadequate security and that [27]7 delayed providing notice of the breach.

[24]7 moves to dismiss the present action under the first-to-file rule, pointing out that the first putative class action arising out of the 2017 data breach was filed in the Central District of California on April 6, 2018. *See Pica, et al. v. Delta Air Lines, Inc., et al.* ("*Pica*"), Case No. 2:18-cv-02876-MWF-E (C.D. Cal.). Alternatively, [24]7 moves to transfer the present action to the Central District of California under either the first-to-file rule or under 28 U.S.C. § 1404(a), or to stay the present action under the first-to-file rule pending disposition of *Pica*.

After completion of briefing, the Court submitted [24]7's motion without oral argument and vacated the hearing which had been set for January 31, 2019. *See* Order Submitting Motion, ECF 86. On February 4, 2019, the Court issued a tentative ruling stating in relevant part as follows:

|  |  |
|---|---|
| 1 | The Court tentatively has determined that *Pica* is the first-filed action and that |
| 2 | application of the first-to-file rule is warranted. The Court has discretion to |
| 3 | transfer, stay, or dismiss *Ford* under the first-to-file rule. *See In re Bozic*, 888 F.3d |
| 4 | 1048, 1051 (9th Cir. 2018). Ordinarily, the Court would be inclined to transfer |
| 5 | *Ford* rather than dismissing or staying it. However, the Ninth Circuit made clear in |
| 6 | *Bozic* that a district court may transfer an action under the first-to-file rule only to a |
| 7 | district in which venue is proper. *Bozic*, 888 F.3d at 1053-54. Based on *Bozic*, it is |
| 8 | not clear that venue is proper in the Central District of California. *See id.* |

Order Providing Tentative Ruling at 2, ECF 87.

Noting that neither party had addressed *Bozic* in the briefing, the Court directed the parties to file 2-page supplemental briefs on or before February 11, 2019, addressing: "(1) the effect of *Bozic* on this Court's authority to transfer *Ford* to the Central District of California; and (2) if transfer is not an option, whether the Court should dismiss or stay *Ford*." Order Providing Tentative Ruling at 2, ECF 87.

Instead of complying with the Court's order, the parties filed a Stipulation to Set Briefing Schedule, proposing to submit 5-page supplemental briefs addressing both the issues this Court directed them to brief by February 11, 2019 and the effect of the *Pica* court's recent tentative ruling dismissing *Pica* with prejudice. Stipulation to Set Briefing Schedule, ECF 88. Under the parties' proposed schedule, Plaintiffs' supplemental brief would be due on February 15, 2019 and [24]7's supplemental brief would be due on February 22, 2019.

The parties' stipulated request to set a briefing schedule is DENIED. As stated in its Order Providing Tentative Ruling, this Court has determined that the first-to-file rule applies. Order Providing Tentative Ruling at 2, ECF 87. As a courtesy to the parties, the Court granted them an opportunity to comment on the *Bozic* case, which neither side had addressed, before the Court decided whether to dismiss, transfer, or stay this action pursuant to the first-to-file rule. The parties elected not to avail themselves of that opportunity. Accordingly, the Court now issues its ruling on [24]7's motion. For the reasons discussed below, [24]7's motion to dismiss the present action under the first-to-file rule is GRANTED.

# I. DISCUSSION

As noted above, [24]7 seeks relief under the first-to-file rule or, in the alternative, under 28 U.S.C. § 1404(a). The Court first takes up application of the first-to-file rule.

## A. First-to-File Rule

### 1. Legal Standard

The first-to-file rule is "a judicially created doctrine of federal comity, which applies when two cases involving substantially similar issues and parties have been filed in different districts." *In re Bozic*, 888 F.3d 1048, 1051 (9th Cir. 2018) (internal quotation marks and citations omitted). "Under that rule, the second district court has discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy." *Id.* at 1051-52 (internal quotation marks and citation omitted). "When applying the first-to-file rule, courts should be driven to maximize economy, consistency, and comity." *Kohn Law Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015) (internal quotation marks and citation omitted).

A district court deciding whether to apply the rule "analyzes three factors: chronology of the lawsuits, similarity of the parties, and similarity of the issues." *Id.* Even if those factors are satisfied, however, a district court in the exercise of its discretion may decline to apply the rule. *See Alltrade, Inc. v. Uniweld Prod., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991). "The circumstances under which an exception to the first-to-file rule typically will be made include bad faith, anticipatory suit, and forum shopping." *Id.* (internal citations omitted). Application of the first-to-file rule is reviewed for abuse of discretion. *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982).

### 2. The Relevant Factors Favor Application of First-to-File Rule

The Court finds that all three factors identified by the Ninth Circuit favor application of the first-to-file rule here.

#### a. Chronology of the Lawsuits

As discussed above, *Pica* was filed in the Central District of California on April 6, 2018, while the present case, *Ford*, was filed in the Northern District of California approximately one month later, on May 10, 2018. *Pica* therefore is the first-filed action.

3

Plaintiffs argue that despite this straightforward chronology, *Pica* should not be treated as the first-filed action because the original *Pica* complaint did not name [24]7 as a defendant. Plaintiffs assert that they filed the present suit "and pursued their case against [24]7 for at least 151 days before [24]7 was ever made a party in *Pica*, and for at least 225 days before [24]7 ever filed a substantive motion in *Pica*." Pls.' Opp. at 4, ECF 81. Plaintiffs do not, however, cite any authority suggesting that those facts are relevant to application of the first-to-file rule. "[A] number of courts have held that the filing of a complaint triggers the first-filed rule, regardless of whether the plaintiff later amends the complaint." *Hilton v. Apple Inc.*, No. C-13-2167, 2013 WL 5487317, at *6 (N.D. Cal. Oct. 1, 2013) (internal quotation marks and citation omitted) (collecting cases); *see also Blue Cove Corp. v. Odyssey Med., Inc.*, No. 10cv2606-IEG BGS, 2011 WL 1157866, at *2 (S.D. Cal. Mar. 28, 2011) ("[C]ourts have consistently held that the relevant date to be used for purposes of the first-to-file rule is the date of the original filing and not an amendment."); *cf. Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 96 (9th Cir. 1982) ("A federal action is commenced by the filing of the complaint, not by service of process."). Under these authorities, *Pica* is the first-filed action.

Some courts have not followed the approach described above, but instead "have applied the relation back doctrine to determine which case is filed first." *Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 988 (N.D. Cal. 2011) (collecting cases). Under the relation-back approach, "[a]n action is considered to have been the first filed, even if it was not chronologically first, if the claims relate back to an original complaint that was chronologically filed first." *Id.* This Court agrees with those decisions finding the relation back inquiry to be unnecessary. *See Hilton*, 2013 WL 5487317, at *6. However, even if the Court were to apply the relation back approach, it appears that the amended complaint that added [24]7 as a defendant in *Pica* would relate back to the filing of the original complaint, as all claims arise from the same data breach.

The Court therefore finds that this factor favors application of the first-to-file rule.

### b. Similarity of Parties

"[T]he first-to-file rule does not require exact identity of the parties." *Kohn*, 787 F.3d at 1240. "Rather, the first-to-file rule requires only substantial similarity of parties." *Id.* Courts in

4

this district generally evaluate this factor by comparing the proposed putative classes rather than the individual class representatives. *See Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1295 (N.D. Cal. 2013) ("Other Northern District courts, including this Court, have applied what appears to be the more widely accepted rule of comparing the putative classes even prior to certification.").

*Pica* is a putative class action asserted on behalf persons who either shopped on Delta's website or mobile application, *or* used the [24]7 electronic chat service platform. *Pica* SAC ¶ 48, ECF 35 in Case No. 18-cv-02876-MWF-E (C.D. Cal.). The operative second amended complaint in *Pica* proposes several different classes, including a "[24]7 Nationwide Class" defined as: "All persons who are residents of the United States and who used the [24]7.AI electronic chat service platform at any time during the period commencing on September 26, 2017 and concluding on October 12, 2017." *Id.*

*Ford* is a putative class action asserted on behalf of persons who shopped on Delta, Best Buy or Sears websites or mobile applications, *or* used the [24]7 electronic customer service platform. Consol. Compl. at 105, ECF 69. The operative consolidated amended class action complaint in *Ford* proposes several different classes, including a "nationwide class" defined as: "All persons who use Defendant's electronic customer service platform or who shopped on Best Buy, Delta, Sears, or any other of Defendant's clients' websites or mobile applications, and whose Customer Data was compromised as a result of the Data Breach." *Id.* The "Defendant" identified in the *Ford* class definition is [24]7.

The proposed classes of persons who used the [24]7 electronic chat platform appear to be identical in both actions. Plaintiffs argue that *Pica* is narrower than the present action, asserting that despite the broad language used to define the "[24]7 Nationwide Class" in *Pica*, that class actually encompasses only persons who shopped for Delta tickets using the [24]7 electronic chat platform. The Court finds it difficult to accept Plaintiffs' assertion given the plain language of the operative pleading in *Pica*. However, even if Plaintiffs are correct that there are some differences between the scope of the proposed classes in the two actions, the Court finds that the putative classes are similar enough to favor application of the first-to-file rule.

5

The fact that *Pica* is asserted against [24]7 and Delta, while *Ford* is asserted only against [24]7, does not weigh against application of the rule. As an initial matter, Delta originally was named as a defendant in *Ford*, but it was dismissed. Moreover, the Ninth Circuit has held expressly that the inclusion of an additional defendant in the later-filed case "does not defeat application of the first-to-file rule." *Kohn*, 787 F.3d at 1240.

### c. Similarity of Issues

"The issues in both cases also need not be identical, only substantially similar." *Kohn*, 787 F.3d at 1240. "To determine whether two suits involve substantially similar issues, we look at whether there is 'substantial overlap' between the two suits. *Id.* at 1241. At the heart of both suits is the 2017 data breach and [27]7's alleged culpability for the breach. Plaintiffs in both suits allege negligence on the part of [24]7, as well as various statutory and common law claims. Plaintiffs in both suits seek statutory and compensatory damages, and injunctive relief, on behalf of a nationwide class of persons who used [24]7's electronic chat platform. Thus, while the lineup of claims in the two actions is not identical, the Court finds that this factor favors application of the first-to-file rule. *See Int'l Aero Prod., LLC v. Aero Advanced Paint Tech., Inc.*, 325 F. Supp. 3d 1078, 1088 (C.D. Cal. 2018) (finding the similarity of issues factor met, despite presence of unique state law claims in only one of the actions, where trademark infringement claim was "[a]t the heart of both cases").

### 3. No Exception Applies

Even when the three factors discussed above favor application of the first-to-file rule, a district court may decline to apply the rule based on equitable considerations. *See Alltrade*, 946 F.2d at 628. Such considerations might include bad faith, anticipatory suit, or forum shopping. *Id.* The record does not suggest the presence of any of those circumstances here.

### 4. Dismissal of *Ford* is Appropriate

Having determined that application of the first-to-file rule is warranted, the Court has discretion to transfer, stay, or dismiss *Ford*. *See Bozic*, 888 F.3d at 1051. [24]7 asks that the Court dismiss *Ford* or, in the alternative, transfer *Ford* to the Central District of California. As a last result, [24]7 asks this Court to stay *Ford* pending disposition of *Pica*.

6

In the Court's view, either dismissal or transfer is warranted under the first-to-file rule. The Court generally has a slight preference for transfer under the rule, especially where – as here – the claims asserted in the later-filed action are substantially similar, but not identical, to the claims asserted in the earlier-filed action. However, it does not appear that this Court has authority to transfer the present action to the Central District of California under the Ninth Circuit's ruling in *Bozic*, discussed as follows.

Until recently, it was unclear whether the first-to-file rule constituted an independent basis for transfer regardless of statutory venue requirements. *Bozic*, 888 F.3d at 1054. In *Bozic*, the Ninth Circuit clarified that a district court may transfer an action under the first-to-file rule *only* to a venue which is proper under the general venue statute, 28 U.S.C. § 1391. *Id.* The Ninth Circuit concluded that a district court's transfer power under the first-to-file rule cannot exceed the transfer power granted under 28 U.S.C. § 1404(a), which governs transfer to another venue for the convenience of witnesses and parties. Stating that in relevant part § 1404(a) permits transfer only to a district where the action originally might have been brought,[1] the Ninth Circuit held that the first-to-file rule must be similarly circumscribed, reasoning that "[a] contrary understanding of the interaction between the first-to-file rule and § 1404(a) would allow a judge-made doctrine to contravene a congressionally enacted statute – a result that the Supreme Court has made clear we cannot countenance." *Id. Bozic* did not suggest that a district court's exercise of discretion under the first-to-file rule otherwise is affected or subsumed by § 1404(a). However, *Bozic* made clear that while the decision *whether* to apply the first-to-file rule is governed by the factors discussed above, *where* a case may be transferred is limited by § 1404(a). *Id.* ("Although the first-to-file rule guides the district court's exercise of discretion in handling related cases, the requirements of § 1404(a) cabin the exercise of that discretion."). Consequently, this Court must find that the Central District of California is a proper venue before transfer may be ordered.

---

[1] "Congress amended § 1404(a) in 2011 to state that cases can be transferred to any other district or division where it might have been brought *or* to any district or division to which all parties have consented." *Zaklit v. Glob. Linguist Sols.*, LLC, No. CV 13-08654 MMM (MANx), 2014 WL 12521725, at *10 n.74 (C.D. Cal. Mar. 24, 2014) (emphasis added). *Bozic* did not address the consent aspect of § 1404(a).

7

Generally, a civil action may be brought in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

[24]7 asserts that *Ford* might have been brought in the Central District of California under § 1391(b)(1), which provides that a civil action may be brought in a judicial district in which any defendant resides, if all defendants are residents of the state in which the district is located. For venue purposes, a corporate defendant such as [24]7 is deemed to reside "in any judicial district in which such a defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). Where a corporate defendant is subject to personal jurisdiction in a state that has more than one judicial district, "such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." 28 U.S.C. § 1391(d).

[24]7 maintains its corporate headquarters in San Jose, California. *See* Contreras Decl. ¶ 4, ECF 47-4. Because San Jose lies within the Northern District of California, [24]7 clearly may be deemed a resident of the Northern District for venue purposes under the authorities discussed above. *See Beauperthuy v. 24 Hour Fitness USA, Inc.*, No. 06-0715-SC, 2012 WL 3757486, at *6 (N.D. Cal. July 5, 2012) (presence of corporate headquarters within a judicial district is sufficient to render the corporation a resident of the district for venue purposes). However, [24]7 also may be deemed a resident of any other judicial district in California with which its "contacts" would subject it to personal jurisdiction, if that district were a separate state. The Court's authority to transfer *Ford* to the Central District of California thus turns on whether [24]7 also has sufficient contacts with the Central District to subject it to personal jurisdiction there.

The record does not establish the existence of such contacts. [24]7 offers evidence that it

8

was hired by Delta and Best Buy to provide chat services, *see* Contreras Decl. ¶ 3, and it points to the pleadings in *Pica* to demonstrate that some individuals who used those chat services resided in the Central District of California, *see Pica* SAC ¶¶ 5-6, ECF 35 in Case No. 18-cv-02876-MWF-E (C.D. Cal.). This showing does not come close to satisfying the Ninth Circuit's three-part test for establishing specific personal jurisdiction. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (discussing requirements for specific personal jurisdiction).

Moreover, the Ninth Circuit has found similar evidence insufficient to establish venue. In *Bozic*, the Ninth Circuit considered whether the transferee court was a proper venue under § 1391(b)(2), which provides that a civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. *See Bozic*, 888 F.3d at 1053. The defendants attempted to meet this requirement by showing that some putative class members bought Lipozene, the product giving rise to the suit, in the transferee district. *Id.* The Ninth Circuit held that the purchase of Lipozene by unnamed class members could not satisfy § 1391(b)(2), because the "events" referenced in that subsection "are only those involving the named plaintiffs." *Id.* While the present case involves § 1391(b)(1) rather than (b)(2), the rationale of *Bozic* would appear to undercut [24]7's argument that the purchases of unnamed class members located in the Central District of California could establish the necessary "contacts" to render venue proper there.

Having concluded that the first-to-file rule applies, and that transfer to the Central District of California is not an option, the Court DISMISSES the present action under the first-to-file rule.

**B. 28 U.S.C. § 1404(a)**

As noted above, [24]7 seeks relief under the first-to-file rule or, in the alternative, under 28 U.S.C. § 1404(a). That statute provides that, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). In light of its determination that [24]7 has not established that the present action might have been brought in the Central District of California, and absent consent of all parties to such transfer, no relief is available under § 1404(a).

**II. ORDER**

(1) The parties' stipulated request to set a schedule for further briefing is DENIED;

(2) [24]7's motion to dismiss the present action, *Ford*, under the first-to-file rule is GRANTED;

(3) The action is hereby DISMISSED WITH PREJUDICE under the first-to-file rule; and

(4) The Clerk shall close the file.

Dated: February 12, 2019

BETH LABSON FREEMAN
United States District Judge